UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ASSOCIATED TERMINALS OF ST. BERNARD, LLC | CIVIL ACTION |
| VERSUS | No. 17-5109 |
| POTENTIAL SHIPPING HK CO., LTD., ET AL. | SECTION I |

### ORDER AND REASONS

Potential Shipping HK Co., Ltd., *in personam* and as owner of the M/V UNISON POWER, *in rem* ("Potential Shipping"), objects[1] to numerous proposed exhibits of Jamaal Ford ("Ford"). Ford filed a response[2] addressing most of the objections.

In his response, Ford indicates that he is withdrawing two of his proposed exhibits, namely, Exhibit 4 and Exhibit 28.[3] As such, Potential Shipping's objections to these proposed exhibits are dismissed as moot.

With respect to Potential Shipping's remaining objections, the Court sustains its objections.

### I.

Most of Potential Shipping's evidentiary objections focus on the issue of hearsay. Under the Federal Rules of Evidence, "hearsay" is "a statement that: (1) the

---

[1] R. Doc. No. 93. On a phone call with the Court on February 15, 2018, counsel for Potential Shipping clarified the portions of the proposed exhibits to which they objected. As the Court addresses the objections, the Court will explain the portions of each exhibit at issue.
[2] R. Doc. No. 106.
[3] *See id.* at 3, 8.

1

declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). (Some statements that meet these criteria are carved out of the definition of hearsay. *See* Fed. R. Evid. 801(d).)

Hearsay is generally inadmissible as competent evidence at trial. Fed. R. Evid. 802. However, the Federal Rule of Evidence recognizes exceptions to this general rule. *See* Fed. R. Evid. 803 (exceptions that are available regardless of a declarant's availability to testify at trial); Fed. R. Evid. 804 (exceptions that are available only when a declarant is unavailable to testify at trial); Fed. R. Evid. 807 (residual exception).

Further, a party may offer out-of-court statements at trial for reasons *other than* to prove the truth of the matter asserted—*e.g.*, "to show the effect on the listener." *White v. Fox*, 470 Fed. App'x 214, 222 (5th Cir. 2012). Simply put, such statements are not hearsay at all. *See* Fed. R. Evid. 801(c) (defining "hearsay" in part based on the purpose for which a party offers an out-of-court statement).

Lastly, the Federal Rule of Evidence clarify that hearsay imbedded within hearsay "is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. Thus, where a party offers hearsay that itself contains hearsay, the Court will not admit the evidence in evidence unless and until the party demonstrates that *each* layer of hearsay is independently admissible.

## II.

### A.

Ford's proposed Exhibit 21 includes an email from Don Zemo of Associated Terminals of St. Bernard, LLC ("Associated Terminals") to Steve Martin of Wilhelmsen Ships Service, Inc. (The date and time on the email are written in Chinese.) Potential Shipping objects to one sentence in the email, beginning with "Our Vessel surveyor" and ending with "are bad, too."[4] It argues that this sentence constitutes "hearsay within hearsay" and "does not meet any hearsay exceptions to cure both levels of hearsay."[5]

In his response, Ford states that he "anticipates that Mr. Zemo will testify live at trial," in which case he suggests that he will not offer the email.[6] However, Ford goes on to argue that, "[t]o the extent [Zemo] cannot [testify at trial], the email is admissible to explain the bases for [his] liability expert Greg Perkin's opinions."[7]

"[I]t is axiomatic that expert opinions may be based on facts or data of a type reasonably relied upon by experts in a particular field, even if the sources are not admissible evidence." *United States v. Gresham*, 118 F.3d 258, 266 (5th Cir. 1997) (citing Fed. R. Evid. 703)). Thus, experts may rely on inadmissible hearsay evidence in developing their expert opinions. *First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996) (citing *Moss v. Ole South Real Estate, Inc.,* 933 F.2d 1300, 1309 (5th Cir. 1991)).

However, an expert's reliance on hearsay to form his expert opinion does not render the hearsay *itself* admissible as competent evidence. Indeed, Federal Rule of

---

[4] The page of the exhibit that features this sentence is marked UP000324.
[5] R. Doc. No. 93, at 1.
[6] R. Doc. No. 106, at 1.
[7] *Id.*

Evidence 703 "was amended in 2000 'to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted.'" *Szymanski v. Murphy*, 437 Fed. App'x 649, 654-55 (10th Cir. 2011) (quoting Fed. R. Evid. 703 advisory committee notes); *cf. Jones v. Am. Council on Exercise*, No. 15-3270, 2016 WL 6084636, at *10 (S.D. Tex. Oct. 18, 2016) (Miller, J.) ("This is perhaps the type of evidence an expert may rely upon, but it is hearsay and not admissible on its own.").

Rather, "if the facts or data" on which an expert relies "would otherwise be inadmissible"—because, for example, the facts or data would constitute hearsay—then the expert "may disclose them to the [factfinder] *only if* their probative value in helping the [factfinder] evaluate the opinion *substantially outweighs* their prejudicial effect." Fed. R. Evid. 703 (emphasis added). In this case, Ford has not demonstrated, or even argued, that the probative value of the objected-to statement in the email in assisting the Court[8] evaluate his liability expert's opinion substantially outweighs its prejudicial effect.

Alternatively, Ford argues that the Court should admit the email in full under Rule 807, the residual exception to the hearsay bar. Rule 807 provides a residual exception to the Federal Rule of Evidence's hearsay rules. Under this rule, "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception" if four circumstances are met:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is

---

[8] The Court is the factfinder in this case.

4

> more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a). The Fifth Circuit has counseled that "[t]he [807] exception is to be 'used only rarely, in truly exceptional cases.'" *United States v. Phillips,* 219 F.3d 404, 419 n. 23 (5th Cir. 2000) (quoting *United States v. Thevis,* 665 F.2d 616, 629 (5th Cir. 1982)).

"[T]he proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force." *Id.* (alteration in original). "[I]n order to find a statement trustworthy, a court must find that the declarant of the . . . statement was particularly likely to be telling the truth when the statement was made." *Id.* (internal quotation marks omitted) (alteration in original). "The determination of trustworthiness is drawn from the totality of the circumstances surrounding the making of the statement, but [it] cannot stem from other corroborating evidence." *United States v. El-Mezain*, 664 F.3d 467, 498 (5th Cir. 2011) (internal quotation marks omitted) (alteration in original). The evidence "must be at least as reliable as evidence admitted under a firmly rooted hearsay exception . . . [and] must similarly be so trustworthy that adversarial testing would add little to its reliability." *Id.* (internal quotation marks omitted) (alteration in original).

In support of the application of Rule 807 to the email, Ford argues that "the statement is contained in an email produced by Defendants, which provides 'circumstantial guarantees of trustworthiness.'"[9] Ford further argues that the

---

[9] *Id.* at 2.

5

statement "demonstrates that multiple wire ropes on the Defendants' Vessel were in poor condition; is more probative of this point than other non-hearsay evidence; and will serve the interests of justice."[10]

What Ford does *not* explain, however, is why the email's production by Potential Shipping during discovery indicates that the objected-to statement in the email is uniquely trustworthy, why this particular statement is more probative than any other non-hearsay evidence—such as Mr. Zemo's live testimony—or why its admission will serve the interests of justice. Moreover, Ford points to no case law to bolster his Rule 807 arguments.

The Court sustains Potential Shipping's objection to Exhibit 21.

### B.

Ford's proposed Exhibit 22 is a series of emails involving numerous individuals. Two of these individuals are Ed Stettinius and Linda Mitchell, both of Freight Management Logistics.

Potential Shipping objects to the May 22, 2017 email from Ed Stettinius,[11] and the two May 19, 2017 emails from Linda Mitchell.[12] It argues that their emails "are inadmissible as hearsay."[13] Potential Shipping also argues that the declarants lacked personal knowledge of the matter discussed in the emails and that Ford will be unable to authenticate the emails at trial.[14]

---

[10] *Id.*
[11] The pages of the exhibit that feature this email are marked UP000394, UP000395, and UP000396.
[12] The pages of the exhibit that feature these emails are marked UP000396 and UP000397.
[13] R. Doc. No. 93, at 2.
[14] *Id.*

For his part, Ford argues that the emails are "admissible to explain the bases for Intervenor's liability expert Gregg Perkin's opinions."[15] Ford also argues that the emails fall outside the Federal Rules of Evidence's definition of hearsay, because the statements in the emails "were adopted by Defendants."[16] Ford does not cite any case law to support his latter argument.[17]

Moreover, Ford does not rebut Potential Shipping's objections based on lack of personal knowledge or inability to authenticate. As the Court explained to the parties, "[a]ny party that does not respond to an objection or motion will be deemed to have waived the ability to contest that objection."[18] The Court thus treats these objections by Potential Shipping as uncontested.

Further, as the Court previously explained, an expert may consider inadmissible hearsay in forming his opinions, but the expert may *disclose* the hearsay only where the probative value of the hearsay in assisting the factfinder assess the expert's opinion substantially outweighs its prejudicial effect. *See* Fed. R. Evid. 703. Ford has not shown, or argued, that the probative value of the emails in assisting the Court evaluate his liability expert's opinion substantially outweighs their prejudicial effect.[19]

The Court sustains Potential Shipping's objections to Exhibit 22.

### C.

---

[15] R. Doc. No. 106, at 3.
[16] *Id.*
[17] As such, Ford's argument is inadequately briefed and therefore waived.
[18] R. Doc. No. 89, at 3.
[19] Alternatively, the Court rejects Ford's suggestion that a party's mere forwarding of an email for "reference" manifests that the party "adopted" the emails as its own statements "believed [the statements] to be true." Fed. R. Evid. 801(d)(2)(B).

7

Ford's proposed Exhibit 2 is a series of emails involving numerous individuals. Of these emails, Potential Shipping objects to only one sentence in a May 19, 2017 email from Don Zemo and addressed to Steve Martin.[20]

The Court notes that this is the same sentence— beginning with "Our Vessel surveyor" and ending with "are bad, too"—to which the Court has already sustained an objection. As it did previously Potential Shipping argues that the sentence is "inadmissible as hearsay."[21]

Ford offers the same argument that the Court previously determined to be a failing one: that the emails are "admissible to explain the bases for Intervenor's liability expert Gregg Perkin's opinions."[22] However, even if an expert may look to inadmissible hearsay in developing his opinions, the expert may disclose the hearsay only where the probative value of the hearsay in assisting the factfinder gauge the expert's opinion substantially outweighs its prejudicial effect. *See* Fed. R. Evid. 703. Ford still has not demonstrated, or argued, that the probative value of the objected-to statement in the email in assisting the Court gauge his liability expert's opinion substantially outweighs its prejudicial effect.

The Court sustains Potential Shipping's objection to Exhibit 2.

### D.

Ford's proposed Exhibit 5 is a report prepared by Associated Terminal's expert surveyor, Captain Ronald Campana.[23] Potential Shipping argues that the report is

---

[20] The page of the exhibit that features this email is marked AT 0000012.
[21] R. Doc. No. 93, at 2.
[22] R. Doc. No. 106, at 4.
[23] The first page of the report is marked AT 0000100, and last page is marked AT 0000137.

8

hearsay and that the expert surveyor "is within the subpoena power of the Court, and can testify live regarding his survey."[24]

Ford represents that he "anticipates that Captain Campana will testify live at trial," in which case he suggests that he will not offer the report.[25] However, Ford goes on to argue that, "[t]o the extent [Captain Campana] cannot [testify at trial], his report is admissible to explain the bases for [his] liability expert Greg Perkin's opinions."[26] Ford also argues that the Court should allow the report in evidence under Rule 807.[27]

"[A]s a general rule, expert reports . . . are hearsay, and therefore generally not admissible as exhibits, although they may be the subject of testimony and might be used to impeach a witness or refresh a witness' recollection." *Flowers v. Striplin*, No. 01-1765, 2003 WL 25683914, at *1 (E.D. La. May 22, 2003) (Engelhardt, J.); *see also Marquette Transp Co. v. Eagle Subaru*, No. 06-9053, 2010 WL 1558921, at *3 (E.D. La. Apr. 15, 2010) (Vance, J.) ("Expert reports are hearsay because they are out of court statements offered to prove the truth of the matter asserted.").

Ford's Rule 807 argument is unconvincing. At the very least, Captain Campana's report is not more probative than *any* other non-hearsay evidence— namely, Captain Campana's live testimony. *Cf. id.* ("The Court finds, however, that the report is not admissible under the residual exception because it is not more probative than other evidence that the parties have already agreed to introduce.

---

[24] R. Doc. No. 93, at 2.
[25] R. Doc. No. 106, at 4.
[26] *Id.*
[27] *Id.* at 5.

9

Specifically, Strouse's unsworn expert report is less probative and less trustworthy than his sworn perpetuation deposition testimony."). The Court also notes that Ford does not cite any case law to support his contention that the report is admissible via Rule 807.

The Court sustains Potential Shipping's objection to Exhibit 5.

**E.**

Ford's proposed Exhibit 36 is a document that allegedly outlines treatment recommendations provided to Ford by one Dr. Brennan.[28] Potential Shipping argues that the document—which "is not part of any certified medical record, is undated and [whose] author is unknown"—is "classic hearsay."[29] Potential Shipping also contends that the document "lacks any foundation establishing the basis for its contents" and "completely lacks authentication."[30]

In his response, Ford states that he anticipates that Dr. Brennen "will testify live at trial," in which case he suggests that he will not offer the document.[31] Ford then goes on to argue that, "[t]o the extent [Dr. Brennan] cannot [testify], his surgical recommendation and cost estimate are admissible to explain the bases for Intervenor's future-medical expert, Dr. Todd Cowen."[32]

Ford does not respond to Potential Shipping's foundation and authentication objections,[33] and the Court thus considers those objections uncontested. In addition,

---

[28] The document is marked J Ford 000058.
[29] R. Doc. No. 93, at 2.
[30] *Id.*
[31] R. Doc. No. 106, at 6.
[32] *Id.*
[33] For example, Ford does not explain how he will authenticate the document.

10

to the extent that Ford asks permission for his expert to disclose the document to the Court in order to explain the information on which he relied to form his opinion, Ford has not established, or argued, that the probative value of the objected-to document in assisting the Court assess his medical expert's opinion substantially outweighs its prejudicial effect.

The Court sustains Potential Shipping's objections to Exhibit 36.

**F.**

Ford's proposed Exhibit 25 is a series of emails involving numerous individuals. Of these emails, Potential Shipping objects to one paragraph in a May 20, 2017 email written by Don Zemo and addressed to "Capt Stanley/Steve."[34] (The M/V UNISON POWER was copied on the email.) The objected-to paragraph reads, in full:

> Please advise if [ ] all the cables and load test[s] after replacement [are] going to be carried out as per the class surveyor recommendations, on all cranes? If so, please advise the completion timeframe? If not, we can offer floating Derrick(s) at $900.00 per [hour] once the bulk has completed.[35]

Potential Shipping argues that this paragraph "is inadmissible as hearsay," and also constitutes "hearsay within hearsay."[36] Potential Shipping further asserts that the paragraph "is inadmissible as evidence of subsequent remedial measures to

---

[34] The page of the email featuring this paragraph is marked UP000602.
   The Court notes that it contacted counsel for both parties regarding the identity or identities of "Capt Stanley/Steve." Neither party has knowledge of this individual or these individuals. However, the email "To" line appears to indicate that "Steve" refers to Steve Martin of Wilhelmsen Ships Service, Inc., and that "Capt Stanley" is a separate individual.
[35] The alterations were made by the Court.
[36] R. Doc. No. 93, at 3.

11

prove negligence, culpable conduct or a need for warning or instruction regarding Potential Shipping and/or the M/V UNISON POWER."[37]

Ford counters that the paragraph "is admissible to explain the bases for Intervenor's liability expert Gregg Perkin's opinions."[38] Yet to the extent that Ford asks permission for his expert to disclose the paragraph pursuant to Rule 703, Ford has not explained, or argued, why the probative value of the objected-to paragraph in assisting the Court assess his liability expert's opinion substantially outweighs its prejudicial effect.

Ford also argues that the paragraph is not hearsay on the ground that Potential Shipping "adopted" the paragraph as its own statement.[39] In his view, the paragraph "shows that Defendants were informed by a Class Surveyor that additional cranes required replacement of the crane wires, and that the Defendants complied with the Class Surveyor's recommendation."[40]

The Court points out that the email containing the paragraph above was written by Don Zemo—a representative of Associated Terminals, not Potential Shipping—to "Capt Stanley/Steve," neither of whom worked for Potential Shipping.[41] Moreover, the email *itself* does not demonstrate compliance with any recommendations by anyone; the email simply demonstrates that a representative of Associated Terminals inquired into whether the recommendations were "going to be

---

[37] *Id.*
[38] R. Doc. No. 106, at 7.
[39] *Id.*
[40] *Id.*
[41] As the Court previously noted, neither party even knows who these individuals are. *See supra* note 34.

carried out." Therefore, the email ***alone*** does not indicate that Potential Shipping adopted any statement. *See* Fed. R. Evid. 801(d)(2)(B).

Potential Shipping's counsel has now informed the Court that Potential Shipping did indeed implement these recommendations.[42] Yet even if the Court were to ignore the hearsay issues with the paragraph, Ford runs into another barrier to the paragraph's admission: Federal Rule of Evidence 407.

Under this rule,

[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:

- negligence;
- culpable conduct;
- a defect in a product or its design; or
- a need for a warning or instruction.

But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

Analyzing case law applying Rule 407, this Court has observed that, "when . . . a post-accident report contains a list of recommended remedial measures which are later actually implemented, the case law supports excluding not only the fact that the remedial measures were implemented, but also the list of recommended remedial measures suggested in the post-accident report." *Ponds v. Force Corp.*, No. 16-1935, 2017 WL 67530, at *2 (E.D. La. Jan. 6, 2017) (Africk, J.); *see also Thornton v. Diamond Offshore Drilling, Inc.*, No. 07-1839, 2008 WL 2315845, at *5 (E.D. La. May 19, 2008) (Vance, J.) ("Although recommendations are not remedial measures that

---

[42] When asked by the Court, Ford indicated that he did not have a basis on which to challenge Potential Shipping's representation.

13

have been implemented, they are of the same character in that they reflect a party's post-accident considerations and thinking about policy changes and safety improvements."); *Walker v. Pioneer Prod. Servs., Inc.*, No. 15-0645, 2016 WL 3459881, at *1 (E.D. La. June 24, 2016) (Zainey, J.) ("[I]nvestigative reports that recommend remedial measures . . . implicate the policies of Rule 407."); *but see Robinson v. Diamond Offshore Mgmt. Co.*, No. 04-1899, 2006 WL 197010, at *3 (E.D. La. Jan. 26, 2006) (Barbier, J.) (holding that "investigative reports that recommend measures are not themselves remedial measures and are not excluded by Fed. R. Evid. 407").

In this case, the objected-to paragraph concerns post-accident recommendations for replacement and testing of "all the cables . . . on all cranes." Potential Shipping implemented these recommendations. Ford hopes to use this paragraph to prove Potential Shipping's "notice of the defective condition of the wiring on the crane that ultimately snapped"[43]—in other words, to prove negligence. Rule 407 and its case law forbid such a use.

The Court sustains Potential Shipping's hearsay objection to Exhibit 25. In the alternative, the Court also concludes that Rule 407 bars the paragraph's admission for the use for which Ford intends to offer it.

### G.

Ford's proposed Exhibit 29 is a series of emails involving numerous individuals. Potential Shipping objects to one paragraph in the series, beginning with

---

[43] R. Doc. No. 106, at 7-8.

14

"Just FYG, we are hearing" and ending with "both H2 and H4 (just an idea)."[44] It argues that the paragraph is "inadmissible hearsay."[45]

Ford argues that the paragraph is "admissible to explain the bases for [his] liability expert Gregg Perkin's opinions."[46] However, to the extent that Ford asks permission for his expert to disclose the paragraph under Rule 703, Ford has not demonstrated, or argued, that the probative value of the objected-to paragraph in assisting the Court gauge his liability expert's opinion substantially outweighs its prejudicial effect.

The Court sustains Potential Shipping's objection to Exhibit 29.

### H.

Ford's proposed Exhibit 1 is a series of emails between Placito Miceli of Turn Services, LCC, and Don Zemo. Potential Shipping objects to two paragraphs in the series: one begins with "Just got a call" and ends with "possibly needing security," and the other begins with "the operator of the ship's gear" and ends with "damaging cargo and equipment."[47]

Potential Shipping argues that these paragraphs "are inadmissible as hearsay and are not based on personal knowledge."[48] Ford counters that they are "admissible to explain the bases for [his] liability expert Gregg Perkin's opinions."[49]

---

[44] The pages of the exhibit that features this paragraph are marked UP001088 and UP001089.
[45] R. Doc. No. 93, at 3.
[46] R. Doc. No. 106, at 8.
[47] The pages of the exhibit that features these paragraphs are marked AT 0000001 and AT 0000002.
[48] R. Doc. No. 93, at 3.
[49] R. Doc. No. 106, at 9.

15

Ford does not address Potential Shipping's objection based on personal knowledge, and the Court thus treats the objection as uncontested. Moreover, to the extent that Ford asks permission for his expert to disclose the paragraphs under Rule 703, Ford has not shown, or argued, that the probative value of the emails in assisting the Court evaluate his liability expert's opinion substantially outweighs their prejudicial effect.

The Court sustains Potential Shipping's objections to Exhibit 1.

## II.

The Court recognizes that it has made these decisions on the cold exhibits. Thus, should there be any unadvanced or unanticipated reason to reconsider these rulings at trial, the parties may request that the Court do so.

Accordingly,

**IT IS ORDERED** that Potential Shipping's objections are sustained in part and dismissed as moot in part, as set forth herein.

New Orleans, Louisiana, February 16, 2018.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**